RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
AUG 25 2025
DANIEL J. McCOY, CLERK
BY:

**Cause No.** 5:25-cv-01238

| | | |
|---|---|---|
| **ASHLEY WINGER,** *Plaintiff* | § § | **IN THE DISTRICT COURT** |
| **V.** | § § | ______ **DISTRICT OF LOUISIANA** |
| **DOUGLAS A. COLLINS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF US DEPARTMENT OF VETERANS AFFAIRS,** *Defendant* | § § § § § | ______________, **LOUISIANA** |

**Introduction**

1. This petition is being filed as per instructions from the EEOC. The petition was mailed on the 21st, on time, of the 95-day petition submission requirement date. The Director provided 90 days from May 19th, 2025. He then provided an additional 5 days because all of the documents had been submitted by mail. The document is being mailed with a time-stamp on the 21st as per his written instructions.

2. This is a civil action seeking declaratory, injunctive, and monetary relief for violations of Plaintiff Ashley Winger's civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb. Plaintiff alleges gender and religious discrimination in connection with her application for a chaplain position with the Department of Veterans Affairs (VA). Ms. Winger also experienced reprisal after engaging in a protected complaint under Title VI, in which her academic transcripts were altered to reflect inaccurate information. Specifically, her clinical education is not reflected on her transcripts, which affects her salary. During the application process, Ms. Winger experienced discrimination due to violations of her constitutional rights as afforded to her in the Establishment Clause of the First Amendment (Section 1983), based on 42 U.S.C. 1983. She

again experienced reprisal when the staff violated the Disaster Relief and National Emergency hospitals laws during COVID-19.

3. Plaintiff further alleges that the VA's policies requiring chaplains to become ordained as a part of the mandatory ecclesiastical endorsement from their respective faith groups is a form of "religious entanglement," in which the government is exerting its power over the religious organizations. More narrowly, the chaplain position in a hospital setting is a non-clerical position. Although it requires the same education as a pastor or minister, ordination is not required. This is the result of many theological debates that ultimately led to the Western Church's division into the Roman Catholic church and several Protestant denominations. Specifically, one of the primary reasons that people left the church to form Protestant traditions was because priests were selling indulgences to the sick and poor as a method for salvation. Consequently, currently, there is no Christian religious tradition that requires ordination for this position, as the theology surrounding this profession has changed. Despite the religious organizations' position, the VA hospital implemented a policy which constitiutes "religious entanglement", as the hospital system required applicants to become ordained to meet the requirements for government employment, while the religious traditions do not require ordination for chaplains and pastoral counselors. In this instance, the government is exerting its power over the applicants as well as the religious organizations by requiring both to violate their religious traditions to accommodate federal government policy. For example, the requirement that Catholic chaplains be priests constitutes institutional discrimination. This policy systematically excludes women, particularly Catholic women, from chaplaincy roles. In contrast, the Roman Catholic religious tradition canonized Mother Theresa for her work as a chaplain caring for the sick, ill and indigent. Similarly, pastoral care was completed and

education for pastoral care was founded by women of the faith tradition. However, the Mormon faith tradition does not support female ordination; thus excluding females from on of the few leadership roles they have in the faith tradition. Similarly, many Baptist and non-denominational religious traditions support females as chaplains; however, they do not support them in ordination. Consequently, Ms. Winger asserts that by implementing an ecclesiastical requirement (that religious traditions do not) as a hiring policy that the hospital has implemented an institutional policy that unnecessarily excludes women and/or forces them to change their faith traditions to gain employment. Ms. Winger also contends that denoting that only members of a favored religious tradition will be considered for employment is also a violation of her constitutional rights. Vonswinkle V. Charlotte confirmed the hiring procedures for federal agencies when hiring a chaplain in light of the Establishment Clause of the First Amendment. The judge found that the government or a federal agency can not require ordination for employment and can not only accept ministers for the position. They demonstrated that neither the government nor the religious traditions can profit by the government hiring chaplains. And lastly, the government can not request that chaplains be members of a favored religious tradition. The VA hospital applications, denote that they are only accepting applicants from favored religious traditions, forced the applicants to pay for a religious endorsemnt (some require 10% of the applicant's salary upon being hired), and also have a government policy in place that requires applicants to obtain religious clerical status for a position that religious organizations deem as non-clerical. This sends a message to the outside world that the government endorses a specific theological position in which clergy are to act as a conduit to God for the patient and their family. This is an alternative to the standard theological position that people have a direct connection to God and that chaplains support and assist the patient, their family, and staff during duress.

4. Ms. Winger contends that she experienced reprisal when the COVID-19 position was canceled in violation of the current National Emergency and Disaster Relief laws. Specifically, local hospital staff did not have the authority to cancel COVID-19 positions; only CMS and the CDC could jointly cancel the positions after the threat of COVID had dissipated. There were 4 positions at the Shreveport Overton Hospital that were cancelled in October of 2020, when CMS kept the positions until May of 2023. The hospital has claimed that the position was cancelled because they implemented new hiring policies at that time; however, the National Emergency laws illustrate that a blanket waiver was active at that time. Specifically, there were federal laws in place that prevented any hospital from adding additional hiring requirements until after the conclusion of COVID-19. More specifically, the hospital did the opposite of what National Emergency laws required; the hospital was required to lower the hiring requirements to ensure that there were enough essential staff under the blanket waiver laws. Instead, t he staff canceled all four positions open to women, added hiring requirements in violation of both clinical residency laws for hospitals, as well as the active COVID-19 National Emergency laws. Moreover, Overton Brooks is a Federal Coordinating Center (FCC) for the National Diaster Medical System, which means that during a time of national disaster such as COVID, the hospital would see Veterans as well as the overflow civilian patients from the state and local hospitals.

5. The Overton Brooks Shreveport hospital had three male chaplains at the time Ms. Winger applied. These three chaplains were expected to visit every patient admitted to the hospital in fifteen LA parishes, 5 counties in Southern Arkansas, and ten counties in East Texas. This is more work than three chaplains could ever complete, as they would have to drive between locations to meet the minimum standard of care. In addition, Overton Brooks has a Women's

Health Care Hospital that treats female health issues as well as serves as a treatment center for women who are victims of sexual assault. As a result, the Women's Health Center is employed by only women and only treats women. Overton Brooks was required to hire a female chaplain to act as a first responder and court advocate for the female victims as per federal law. Overton Brooks Hospital has not had a female employed since 2016. Ms. Winger was the only qualified female applicant who applied. Mrs. Noah O'Donnell completed a prime-time news special showing the effects of not having a first responder on staff for these women. Thus, cancelling this position led to Ms. Winger's loss of employment; however, many of the women that she would have been treating as a first responder to victims of sexual assault committed suicide as a result of their actions. This is why cancelling this position during a National State of Emergency comes with a two-year jail sentence. Ms. Winger also has an Equal Pay Act Claim as the hospital was required to hire a female chaplain, and instead cancelled the position and later hired a male Catholic priest.

**Jurisdiction and Venue**

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), Title VII, and 42 U.S.C. § 2000bb (RFRA). Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the discriminatory actions occurred within this district, and the Defendant operates facilities in this district.

**Parties**

7. Plaintiff, Ashley Winger, is an individual residing in Lubbock, Texas, and at all relevant times was an applicant for employment as a chaplain at the Department of Veterans Affairs.

8. Defendant, Douglas A. Collins, is the Secretary of the Department of Veterans Affairs, and is sued in his official capacity.

**Factual Background**

9. In March 2020, the Department of Veterans Affairs posted a job vacancy for a Protestant chaplain position under Vacancy Announcement Number 10907071 at Overton Brooks VA Medical Center in Shreveport, Louisiana. *See*, Plaintiff's (PL) Exhibit 1

10. Plaintiff applied for the position, and in August 2020, was notified that she met the qualifications for the position, receiving an interview scheduled for October 2020. PL Ex. 2

11. On October 1, 2020, Plaintiff was notified that her interview was canceled, along with the vacancy itself, due to new VA policy changes. The VA's newly issued September 2020 VA Handbook 5005/135 revised the qualifications for chaplains, doubling the number of Clinical Pastoral Education (CPE) units from two to four. (Ms. Winger had more than four CPE credits, an ecclesiatisical endorsement and was eligible to join a BCCI organization). In addition, applicants for chaplain positions would be required to procure an ecclesiastical endorsement from their faith group as well as to join ACPE's board certification agency. PL Ex. 3 There are multiple clinical education training locations, and ACPE does not acknowledge other US Department of Education-approved training centers other than their own. This is why the organization was set to enter into bankruptcy before the VA hospital included membership in its hiring mandate. There were multiple ethical issues with being forced to changed her religious affliation to qualify to apply and to join an organization that openly rejected the clinical education from renouned seminaries across the US.

12. Plaintiff was informed by the VA that she no longer qualified for the chaplain position under the new requirements. Specifically, Plaintiff was told that she lacked the requisite number of CPE hours. The Plaintiff learned of reprisal as her clinical residency units completed removed from her transcripts, which is a Title VI violation. Plaintiff had to unnecessarily change her

religious tradition to meet the clerical requirement added to the application, which was a violation of Section 1983. PL Ex. 4

13. Plaintiff had to switch her identified religious affiliation to meet the "minister' requirement to qualify for a chaplain position. More narrowly, she could not apply as a Catholic. Bishop Higgins denied her request for a Catholic ecclesiastical endorsement, citing the VA's policy restricting Catholic chaplain roles exclusively to Catholic priests, in accordance with 38 C.F.R. § 17.655(b)(1). Since the Catholic church only allows men to be priests, the VA's ecclesiastical endorsement requirement effectively excluded all women—including Plaintiff—from the position. PL Ex. 5 Despite the fact that United States has more Catholic women educated at US Department Accredited Schools and certified as chaplains than men; there are no female Catholic chaplains employed at any location as a result of the policy 38 C.F.R. 17.655 b1. This policy is in direct opposition to the stance of the Roman Catholic church that

14. Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on November 13, 2020, alleging that the VA's chaplaincy policies constituted discrimination on the basis of gender and religion.

15. On or about ____Feburary 2021_____, Plaintiff's timely filed an appeal on her complaint. That appeal has been pending for four years since, with the EEOC neither ruling on her appeal nor issuing a "Right to Sue" letter. As the time for the EEOC to rule on the appeal has expired, Plaintiff has exhausted her administrative remedies and now pivots to this petition and the federal court. Ms. Winger received a Right to Sue Letter on May 19th affording her 95 days to submit a petition

**Causes of Action**

Count 1: Gender Discrimination Under Title VII

16. Plaintiff incorporates by reference all prior paragraphs.

17. Defendant's actions denying Plaintiff an interview and failing to hire her as a chaplain were based on her gender.

18. Plaintiff was qualified for the chaplain position at the time of her application, but Defendant's new policy requiring an ecclesiastical endorsement systematically excludes women, including Plaintiff, from positions for "Catholic chaplains."

19. Defendant's conduct constitutes gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

Count 2: Religious Discrimination Under Title VII

20. Plaintiff incorporates by reference all prior paragraphs.

21. Defendant's requirement for a Catholic ecclesiastical endorsement prevented Plaintiff from being hired as a chaplain based on her religious identity.

22. The VA's ecclesiastical endorsement policy impermissibly favors certain religious affiliations (Catholic priests), while disqualifying others (all non-priests, of which all women are included), resulting in religious discrimination against Plaintiff.

23. Defendant's actions constitute religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

Count 3: Gender and Religious Discrimination Under the Equal Protection Clause

24. Plaintiff incorporates by reference all prior paragraphs.

25. The VA's policy requiring Catholic chaplains to be priests, as well as other ecclesiastical endorsement policies, systematically exclude women and Catholic women from chaplaincy positions.

26. These policies violate the Equal Protection Clause of the U.S. Constitution, as enforced through a *Bivens* actions or 42 U.S.C. § 1983, by discriminating on the basis of gender and religion.

Count 4: Violation of the Religious Freedom Restoration Act (RFRA)

27. Plaintiff incorporates by reference all prior paragraphs.

28. Defendant's ecclesiastical endorsement requirement imposes a substantial burden on Plaintiff's free exercise of religion by preventing her from serving as a chaplain unless she obtains an endorsement that is inaccessible due to her gender and religious affiliation.

29. Defendant cannot demonstrate a compelling governmental interest justifying the gender-based and religion-based requirements for VA chaplaincy positions.

30. Therefore, Defendant's policies violate the Religious Freedom Restoration Act.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's actions violated Title VII, the Equal Protection Clause, and the Religious Freedom Restoration Act;

B. Enjoin Defendant from enforcing policies that discriminate on the basis of gender and religion;

C. Order Defendant to revise its chaplaincy endorsement policies to remove the gender and religion-based barriers;

D. Award Plaintiff compensatory damages for lost wages, emotional distress, and other harm; E. Award Plaintiff attorney's fees and costs under 42 U.S.C. § 2000e-5(k); and

F. Grant any other relief this Court deems just and proper.

Respectfully submitted,

/s/ *Peter J Bean*

Peter ("Audrey") Bean
State Bar No. 24073897
Law Office of Audrey Bean
910 W 21st Street, Ste A
Austin, TX 78705
(512) 567-6544
lawoffice@audreybean.com